## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| COLLEEN CHANDLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:25-cv-02399 |
| ) | |
| JOHNSON COUNTY COMMUNITY ) | |
| COLLEGE ) | |
| **Serve:** ) | **JURY TRIAL REQUESTED** |
|    Kelsey Patterson Nazar ) | |
|    Vice President and General Counsel ) | |
|    12345 College Blvd ) | |
|    Overland Park, KS 66201 ) | |
| ) | |
| and ) | |
| ) | |
| JOHNSON COUNTY COMMUNITY ) | |
| COLLEGE BOARD OF TRUSTEES ) | |
| **Serve:** ) | |
|    Dawn Rattan ) | |
|    Board Secretary ) | |
|    12345 College Blvd. ) | |
|    Overland Park, KS 66201 ) | |
| ) | |
| Defendants. ) | |

## **COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Colleen Chandler, by and through counsel, and for her causes of action against Defendant Johnson County Community College ("JCCC") and Johnson County Community College Board of Trustees ("Trustees"), for employment discrimination and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), and Kansas common law, and states and alleges as follows:

## PARTIES

1. Plaintiff is an individual residing at 1271 North Marilla Lane, Olathe, Kansas, and she was employed by Defendant, including her final position as Vice-President of Human Resources, until her termination from employment on or about September 9, 2023.

2. Plaintiff is a 46-year-old female.

3. Defendant JCCC is a municipal entity and political subdivision of the state of Kansas, created by and operating in Johnson County, Kansas.

4. Defendant Trustees governs JCCC, sets the budgets for JCCC, and is responsible for the management and control of JCCC, and is composed of a seven-member board of trustees elected at-large from the community to four-year terms.

5. At all relevant times, Defendants were "employers" jointly and severally of Plaintiff within the meaning of the ADEA, Title VII, and Kansas common law.

6. Defendants operate their businesses in a joint and integrated manner such that they effectively are joint employers or an integrated enterprise.

7. All of the acts, conduct, and omissions of Defendants were performed by their agents, representatives, and employees while in the course and scope of their agency or employment.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the acts complained of involve violations of Plaintiff's rights under federal law, specifically the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII").

9. This Court has supplemental federal jurisdiction pursuant to 28 U.S.C. § 1367 to resolve Plaintiff's claims arising under Kansas law and public policy as the facts are so related to Plaintiff's federal law claim as to be part of the same case or controversy.

10. Venue is proper within this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the district including the unlawful employment practices set forth herein that are alleged to have been committed in this District by Defendants.

## FACTUAL ALLEGATIONS

11. Plaintiff was employed by Defendants for more than 8 years beginning in or about September 2015 until her wrongful termination on or about September 9, 2023 from her final position as Vice-President of Human Resources.

12. At all relevant times, Defendants individually and collectively were engaged in an industry affecting commerce and individually and/or collectively employed more than 20 persons for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

13. At all times herein mentioned, Plaintiff was an "employee" of both Defendants within the meaning of the ADEA, Title VII, and Kansas common law, and she is entitled to all the benefits and protections of those laws.

14. Throughout her employment with Defendants, Plaintiff was subject to the control of Defendants as to the means and manner of accomplishing her work as an employee.

15. Plaintiff is a 46-year-old female.

16. Throughout Plaintiff's eight years of employment with Defendants, she performed all duties of her job as required, exceeded the expectations of her position, and received promotions, praise, raises, and excellent reviews for her work.

17. Plaintiff had never been written up, placed on a PIP, or given a bad performance review.

18. Prior to and including her wrongful termination, Plaintiff experienced a pattern and practice of disparate treatment in the terms and conditions of her employment based on her age, gender, and retaliation by Defendants including, but not limited to false performance criticisms, failure to follow JCCC's progressive discipline policy, her wrongful termination, and failure to reinstate her to her position.

19. Upon information and belief, throughout Plaintiff's employment, the President of JCCC would often ignore Plaintiff's ideas for the college in favor of the ideas from male executives.

20. Upon information and belief, Plaintiff was paid less than less-qualified, younger and/or male employees who started after her.

21. Upon information and belief, Defendants received complaints of age discrimination that the President of JCCC ignored and did not want investigated.

22. In or about April 2023, Plaintiff received a favorable performance review from the president of JCCC: She was told that she was a "very capable leader and HR professional" and that she was "what is needed in the year ahead."

23. In July 2023, Plaintiff raised concerns that the college was partaking in illegal/non-compliant activity, including having people providing mental health counseling who do not have

licenses and providing professors and employees access to every student's and employee's social security numbers.

24. Plaintiff reported those acts as violations of Kansas law to Defendants, and in June and July reported the same to the President, providing him with the relevant Kansas statute.

25. Plaintiff also made written and verbal reports throughout July to Defendants' Provost and General Counsel. In her capacity as Vice President of HR, it was not Plaintiff's duty to report the illegal/non-compliant conduct she reported to Defendants.

26. Within six days of her last report of illegal/non-compliant activity to JCCC, Plaintiff received verbal notice that she was being placed on Administrative Leave due to performance.

27. Plaintiff was given a letter stating she was being placed on Administrative Leave for not fulfilling her job duties, as well as a Severance Agreement, and her email access was promptly cut off.

28. Upon information and belief, JCCC informs its employees, including Plaintiff, during supervisor training that performance coaching is provided prior to any disciplinary action being taken.

29. JCCC did not follow its progressive discipline policy in placing Plaintiff on administrative leave, as she had never received any performance coaching, discipline, PIP, or any indication that her performance was poor prior to her being placed on administrative leave.

30. Upon information and belief, similarly situated male employees—including the former Executive Vice-President, Finance and Administrative Services, the former Vice-President, Information Services/CIO, the former Director of Audit and Auxiliary Services, the Dean of Business, and the Director of Cosmetology—were provided opportunities to correct any perceived

5

performance issues before experiencing any adverse action, including being given formal performance coaching and resources.

31.  On August 25, 2023, Plaintiff received a letter stating that she was being terminated on September 9, 2023, and that she could appeal the termination.

32.  Plaintiff appealed her termination and sent written documentation outlining that her termination was due to age and/or gender discrimination and retaliation.

33.  On or about October 27, 2023, Plaintiff was informed that her termination was being upheld.

34.  On March 6, 2024, Plaintiff filed a timely charge alleging age and sex discrimination and retaliation, as well as Kansas law and public policy violations against Defendants with the Equal Employment Opportunity Commission ("EEOC").  (Attached as Exhibit A.)

35.  On or about April 23, 2025, the EEOC mailed a Notice of Right to Sue to Plaintiff. (Attached as Exhibit B.)

36.  This case has been filed within 90 days after Plaintiff received the Notice of Right to Sue from the EEOC.

37.  Plaintiff has met all deadlines and has satisfied all administrative prerequisites to filing suit.

## COUNT I – AGE DISCRIMINATION (ADEA)

38.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 37 above.

39.  Plaintiff's age was a "because of" and/or a "but for" cause of Defendants' intentional decision to discriminate against her in the terms and conditions of her employment, by,

including but not limited to, subjecting her to false performance criticisms, failure to follow JCCC's progressive discipline policy, her wrongful termination for false, pre-textual reasons, and failure to reinstate her to her position as set forth above.

40. Defendants treated similarly situated, substantially younger and less-qualified employees and applicants better than Plaintiff in the terms and conditions of their employment.

41. On information and belief, Plaintiff was initially replaced and/or her job duties were initially assumed by less-qualified, less-tenured, and substantially younger persons.

42. The discriminatory actions of Defendants detrimentally affected Plaintiff in the terms and conditions of her employment with Defendants.

43. Defendants knew, or should have known, of the age discrimination against its employees, including Plaintiff.

44. Defendants failed to take prompt and appropriate corrective action to end the age discrimination against their employees, including Plaintiff.

45. Defendants failed to make good faith efforts to enforce their policies to prevent age discrimination against their employees, including Plaintiff.

46. Defendants' conduct was willful and showed reckless disregard of the rights of Plaintiff under the ADEA, thus justifying an award of liquidated damages.

47. As a direct result of Defendants' illegal and discriminatory actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants, jointly and severally, on Count I, and requests an award of her actual, compensatory damages, including

but not limited to her lost wages and benefits, with interest through the date of trial and thereafter, damages for future loss of wages and benefits, liquidated damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, pre-judgment interest, post-judgment interest, and any such other relief as the Court deems just and proper.

## COUNT II – RETALIATION (ADEA)

48. Plaintiff incorporates by reference the allegations of paragraphs 1 through 47 above.

49. Plaintiff had a good faith, reasonable belief that she was being subjected to unlawful employment practices, including disparate treatment by Defendants on the basis of her age in the terms and conditions of her employment compared with similarly situated, substantially younger employees, and she reported the same to Defendant.

50. Defendants retaliated against Plaintiff because of her opposition to unlawful discriminatory employment practices, including but not limited to subjecting her to false performance criticisms, failure to follow JCCC's progressive discipline policy, and her wrongful termination for false, pretextual reasons, as set forth above.

51. Plaintiff's opposition to unlawful discriminatory employment practices was a "but for" determining factor in Defendants' decision to subject her to adverse employment actions, including those actions set forth above and herein, and including the termination of her employment.

52. Defendants' conduct was knowing and willful and intentionally violated Plaintiff's rights under the ADEA and is sufficient therefore to warrant an award of liquidated damages.

53. As a direct result of Defendants' illegal and retaliatory actions, Plaintiff has

sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, and other pecuniary and nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants, jointly and severally, on Count II, and requests an award of her actual damages, including but not limited to her lost wages and benefits, with interest, through the date of trial and thereafter, damages for future loss of wages and benefits, liquidated damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, pre-judgment interest, post-judgment interest, and any such other relief as the Court deems just and proper.

## COUNT III – SEX DISCRIMINATION (TITLE VII)

54. Plaintiff incorporates by reference the allegations of paragraphs 1 through 53 above.

55. Plaintiff's sex was a motivating and/or determining factor in Defendants' intentional decision to discriminate against her in the terms and conditions of her employment, including, but not limited to, subjecting her to false performance criticisms, failure to follow JCCC's progressive discipline policy, her wrongful termination for false, pre-textual reasons, and failure to reinstate her to her position, as set forth above.

56. Defendants knew, or should have known, of the illegal sex discrimination against Plaintiff and other similarly situated employees.

57. Defendants failed to take prompt and appropriate corrective action to end the sex discrimination against Plaintiff and other similarly situated employees.

58. Defendants failed to make good faith efforts to enforce their policies to prevent discrimination against their employees, including Plaintiff.

59. As a direct and proximate result of the continuing pattern and practice of sex discrimination directed toward her or disparate treatment of her, Plaintiff has suffered actual damages in the form of lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, mental anguish, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to her reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants, jointly and severally, on Count III, including but not limited to her lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## COUNT IV – TITLE VII RETALIATION

60. Plaintiff incorporates by reference the allegations of paragraphs 1 through 59 above.

61. Plaintiff had a good faith, reasonable belief that Defendants were engaged in unlawful employment practices, including sex discrimination, and she reported the same to Defendant.

62. Defendants retaliated against Plaintiff because of her opposition to unlawful employment practices by adversely impacting the terms and conditions of her employment, including, but not limited to, false performance criticisms, failure to follow JCCC's progressive

discipline policy, her wrongful termination for false, pre-textual reasons, and failure to reinstate her to her position, as set forth above.

63. Plaintiff's opposition to Defendants' unlawful employment practices was a motivating and/or determining factor in Defendants' decision to terminate her employment and refusal to reinstate her to her position.

64. As a direct result of Defendants' illegal and retaliatory actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants, jointly and severally, on Count IV and requests an award of her actual damages, including but not limited to her lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## COUNT V – KANSAS PUBLIC POLICY
### (WHISTLEBLOWER RETALIATION)

65. Plaintiff incorporates by reference the allegations of paragraphs 1 through 64 above.

66. During the course of her employment with Defendant, Plaintiff learned that the Defendants were engaged in serious violations of rules, regulations, and/or the law.

67. The serious violations of the Defendants included, but were not limited to, having people providing mental health counseling who do not have licenses, and providing professors and employees access to every student's and employee's social security numbers in violation of the Family Educational Rights and Privacy Act.

68. A reasonably prudent person in Plaintiff's position would have similarly concluded that the Defendants were engaging in serious violations of rules, regulations, or the law.

69. Because of her good faith concern and desire to correct these violations, Plaintiff reported to Defendants that Defendants were engaging in serious violations of rules, regulations, or the law. In her capacity as Vice President of HR, it was not Plaintiff's duty to report the illegal/non-compliant conduct she reported to Defendants.

70. Defendants were aware of Plaintiff's reports of serious violations of law prior to subjecting her to adverse employment actions and terminating her employment.

71. Defendants retaliated against Plaintiff in the terms and conditions of her employment because of her reports of serious violations of law, including but not limited to, subjecting her to false performance criticisms, failure to follow JCCC's progressive discipline policy, her wrongful termination for false, pre-textual reasons, and failure to reinstate her to her position, as set forth above.

72. As a direct and proximate result of Defendants' illegal retaliatory actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to her reputation, loss of self-esteem, humiliation, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants, jointly and severally, on Count V and requests an award of her actual damages, including but not limited

to her lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the trial site for this case.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**SIRO SMITH DICKSON PC**

By /s/ Ryan P. McEnaney
　　Ryan P. McEnaney　　　　KS FED #78827
　　Isabella Neuberg　　　　　KS FED #79264
　　Athena M. Dickson　　　　　KS #21533
　　Eric W. Smith　　　　　　　KS #70235
　　1621 Baltimore Avenue
　　Kansas City, Missouri  64108
　　816.471.4881 (Tel)
　　816.471.4883 (Fax)
　　rmcenaney@sirosmithdickson.com (email)
　　rsiro@sirosmithdickson.com (email)
　　adickson@sirosmithdickson.com (email)
　　esmith@sirosmithdickson.com (email)

**ATTORNEYS FOR PLAINTIFF**